# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | : | |
|---|---|---|
| TROY BELL, | : | |
| | : | Case No. 2:19-cv-18025 (BRM)(ESK) |
| Plaintiff, | : | |
| | : | |
| v. | : | **OPINION** |
| | : | |
| UNITED STATES OF AMERICA, et al., | : | |
| | : | |
| Defendants. | : | |
| | : | |

Before this Court is *pro se* prisoner Troy Bell's ("Plaintiff") amended complaint, filed pursuant to 42 U.S.C. § 1983. (ECF No. 1.) Based on his affidavit of indigence (ECF No. 3), the Court previously granted him leave to proceed *in forma pauperis* and ordered the Clerk of the Court to file the Complaint. (ECF No. 5.) Plaintiff filed an amended complaint on February 6, 2020 (ECF No. 6) and a "letter" that the Court construes as a second amended complaint on May 29, 2020. (ECF No. 7 ("2nd Am. Compl.").)

At this time, the Court must review the second amended complaint, pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A, to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief. For the reasons set forth below, the Court concludes the second amended complaint should be dismissed.

## I. BACKGROUND

From December 2011 through June 2012, Plaintiff acted as confidential witness and informant for the Federal Bureau of Investigations ("F.B.I.").[1] (2nd Am. Compl. 4.) Plaintiff worked with F.B.I. agents Ronald Duce and Michael Tanir. (*Id.*) Plaintiff submits the F.B.I. reached out to Plaintiff to get his statement for a case against an individual named Paul Bergin. (*Id.* at 5.) Plaintiff then called the agents and asked if they were interested in an individual named Gershon Clark, a well-known drug dealer, which resulted in Plaintiff cooperating with the F.B.I. (*Id.* at 5.) Plaintiff alleges F.B.I Agent Tanir told Plaintiff he would be paid sixteen-thousand-dollars to relocate after the investigation was complete. (*Id.* at 6-7.) Plaintiff alleges he was paid one-thousand-dollars and signed papers. (*Id.* at 7.)

On June 26, 2012, before the investigation was complete, Plaintiff was arrested by Neptune Police on a gun charge. (*Id.* at 3, 6, & 13.) Plaintiff alleges that an individual named Cowan Rainy lied to the Neptune Police, stating the Plaintiff had purchased two guns from him. (*Id.*) Plaintiff also states that after being questioned on June 18, 2012, regarding his gun charge, he ran because he did not want to go back to jail and Neptune Police would not promise him bail. (*Id.* at 10-11, 13.) Plaintiff was then arrested on June 26, 2012. (*Id.* at 13.) Plaintiff alleges the Asbury Park Police kicked in the door of Lataria Clark without a warrant and illegally apprehended Plaintiff. (*Id.* at 15-16.) Plaintiff further alleges the Asbury Park Police lied in their report and threatened Ms. Clark with having her son taken away so that she would consent to a search of the apartment. (*Id.* at 16-17.)

---

[1] The factual allegations are taken from the second amended complaint and are accepted for purposes of this screening only. The Court has made no findings as to the veracity of Plaintiff's allegations.

2

Plaintiff submits that once he was arrested, he never saw the F.B.I. agents again. (*Id.* at 14.) Plaintiff was not given another chance to cooperate with the F.B.I. (*Id.* at 15.) Plaintiff submits that in 2018 someone used Facebook messenger to threaten to kill Plaintiff. (*Id.* at 18-19.) Plaintiff alleges that the F.B.I never offered Plaintiff protection in 2012, nor did they pay Plaintiff the sixteen-thousand-dollars he is owed. (*Id.* at 20.) Plaintiff alleges that the F.B.I. left him for dead in the County Jail after Gershon Clark, a member of the Bloods, told individuals at the jail that Plaintiff had told on Clark. (ECF No. 7-2 at 3.) Plaintiff was transferred to Essex County Correctional Facility. (*Id.* at 7.) He was left stranded by the F.B.I. (*Id.* at 7-8.)

Plaintiff also appears to allege that he is pending sentencing in a federal escape case and the Judge told Plaintiff he would get time served. (*See generally* ECF No. 7-2.) Plaintiff alleges the Judge told Plaintiff his sentencing date would be set for July or August 2019. (*Id.* at 4.) Plaintiff submits he still has not been sentenced or had a court date. (*Id.* at 9.)

Plaintiff is seeking monetary damages ranging between $280,000.00 to $280,000,000,000.00 (*Id.* at 12.) He is also seeking a sentence of time served. (*See* ECF No. 7-3.)

## II. LEGAL STANDARD

### A. Standard for a *Sua Sponte* Dismissal

Per the Prison Litigation Reform Act, Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996) ("PLRA"), district courts must review complaints in those civil actions in which a prisoner is proceeding *in forma pauperis*, *see* 28 U.S.C. § 1915(e)(2)(B), seeks redress against a governmental employee or entity, *see* 28 U.S.C. § 1915A(b), or brings a claim with respect to prison conditions, *see* 42 U.S.C. § 1997e. The PLRA directs district courts to sua sponte dismiss any claim that is frivolous, is malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. This action is

subject to *sua sponte* screening for dismissal under 28 U.S.C. § 1915(e)(2)(B) and 1915A because Plaintiff is a prisoner who is proceeding as indigent.

According to the Supreme Court's decision in *Ashcroft v. Iqbal*, "a pleading that offers 'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). To survive *sua sponte* screening for failure to state a claim, the complaint must allege "sufficient factual matter" to show that the claim is facially plausible. *Fowler v. UPMS Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Belmont v. MB Inv. Partners, Inc.*, 708 F.3d 470, 483 n.17 (3d Cir. 2012) (quoting *Iqbal*, 556 U.S. at 678). Moreover, while pro se pleadings are liberally construed, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citation omitted).

**B. Section 1983 Actions**

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of his constitutional rights. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

Therefore, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, the alleged

4

deprivation was committed or caused by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

**III. DECISION**

    **A. Breach of Contract**

Plaintiff appears to be raising a breach of contract claim against the United States and F.B.I. agents Duce and Tanir for failing to pay or protect Plaintiff after he acted as an informant. (See generally 2nd Am. Compl.) The Court lacks jurisdiction over Plaintiff's breach of contract claim. Thus, the Court will dismiss the breach of contract claim without prejudice.

"The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). "Jurisdiction over non-tort monetary claims against the United States is exclusively defined by the Tucker Act, as codified at 28 U.S.C. §§ 1346, 1491, because it is only under the terms of the Tucker Act that the United States waives its sovereign immunity to non-tort claims seeking monetary relief." *Chabal v. Reagan*, 822 F.2d 349, 353 (3d Cir. 1987). Pursuant to the Tucker Act, therefore, the Court of Federal Claims is empowered with jurisdiction over non-tort claims against the United States. *See* 28 U.S.C. § 1491(a). The Court of Federal Claims' jurisdiction is concurrent with that of the district courts for claims under $10,000. 28 U.S.C. § 1346(a)(2). For claims in which more than $10,000 is at issue, however, courts have interpreted the Tucker Act to provide for the exclusive jurisdiction of the Court of Federal Claims. *Dia Navigation Co. v. Pomeroy*, 34 F.3d 1255, 1267 (3d Cir.1994); *Hahn v. United States*, 757 F.2d 581, 586 (3d Cir.1985) ("It is uniformly held that, for claims exceeding $10,000, the Tucker Act

vests exclusive jurisdiction in the Claims Court."); *Horne v. Cherry Hill Office of Federal Bureau of Investigations*, No. 16-5620, 2020 WL 2570016 at *5 (D.N.J. May 21, 2020)(finding the Court lacked jurisdiction over a breach of contract claim involving a confidential informant's payment from the F.B.I. based on the Tucker Act.)

Plaintiff appears to raise a breach of contract claim against the United States; thus, this Court cannot properly exercise jurisdiction over the subject matter if the amount at issue exceeds $10,000.00. Plaintiff states he is demanding $280,000.00, on the low end. (ECF No. 7-2 at 12.) Based on the allegations in the second amended complaint, Plaintiff at a minimum alleges he is entitled to the $16,000.00 the F.B.I. agents agreed to pay him. (2nd Am. Compl. 20.) This amount exceeds the jurisdictional limit. Accordingly, this Court lacks subject matter jurisdiction over the instant dispute.

### B. False Arrest and Illegal Search

The Court construes Plaintiff's second amended complaint as also raising claims regarding false arrest and illegal search. (*See* 2nd Am. Compl. 15-17.) Plaintiff alleges that the Asbury Park Police kicked in the door of Lataria Clark's apartment without a warrant and illegally apprehended Plaintiff. (*Id.* at 15-16.) Plaintiff further alleges the Asbury Park Police lied in their report and threatened Ms. Clark with having her son taken away so that she would consent to a search of the apartment. (*Id.* at 16-17.)

Section 1983 claims are governed by the applicable state's statute of limitations for personal-injury claims. *Wallace v. Kato*, 549 U.S. 384, 387 (2007); *see also Cito v. Bridgewater Twp. Police Dep't*, 892 F.2d 23, 25 (3d Cir. 1989). Under New Jersey law, there is a two-year statute of limitations period for personal-injury torts. N.J. Stat. Ann. § 2A:14–2. Therefore, Plaintiff's § 1983 claims are governed by a two-year statute of limitations. *See Cito*, 892 F.2d at

25. The limitation period begins to run on the accrual date, which is governed by federal law. *Kach v. Hose*, 589 F.3d 626, 634 (3d Cir. 2009). Under federal law, a claim accrues when the facts which support the claim reasonably should have become known to the plaintiff. *Sameric Corp. v. City of Phila.*, 142 F.3d 582, 599 (3d Cir. 1998).

New Jersey law governs when accrual of a § 1983 claim may be delayed pursuant to the discovery rule and when a limitation period may be equitably tolled. *See Dique v. New Jersey State Police*, 603 F.3d 181, 185 (3d Cir. 2010). The discovery rule postpones a claim from accruing if a plaintiff is reasonably unaware that he has suffered an injury or, even though he is aware of the injury, that it was the fault of an identifiable person. *See Caravaggio v. D'Agostini*, 765 A.2d 182, 187 (N.J. 2001). "[E]quitable tolling may be applied where 'the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass' or where a plaintiff "has in some extraordinary way been prevented from asserting his rights," or where a plaintiff has timely asserted his rights mistakenly by either defective pleading or in the wrong forum. *Freeman v. State*, 788 A.2d 867, 880 (N.J. Super. Ct. App. Div.) (internal citations and quotations omitted). "[A]bsent a showing of intentional inducement or trickery by a defendant, the doctrine of equitable tolling should be applied sparingly and only in the rare situation where it is demanded by sound legal principles as well as the interests of justice." *Id.*

The Court finds Plaintiff's false arrest and illegal search claims barred by the statute of limitations. A claim of false arrest, and the accompanying claim for false imprisonment, accrues immediately upon the arrest at issue. *Wallace*, 549 U.S. at 389–90 & n.3, 127 S. Ct. 1091; *Singleton v. DA Philadelphia*, 411 F. App'x 470, 472 (3d Cir. 2011)(accrual of a claim for false arrest occurred on the date the plaintiff "was arrested and charges were filed against him"). Nevertheless, while the claim accrues upon arrest, the statute of limitations does not begin to run at the same

time. Instead, the statute of limitations for a false arrest/imprisonment claim begins to run "when the individual is released, or becomes held pursuant to legal process," i.e., when he is arraigned. *Alexander*, 367 F. App'x at 290 n.2 (*citing Wallace*, 549 U.S. at 389–90, 127 S. Ct. 1091); *see also Pittman v. Metuchen Police Dep't*, 441 F. App'x 826, 828 (3d Cir. 2011).

Even if the Court were to give Plaintiff the benefit of using the date of his guilty plea, September 24, 2014[2], as the date he was "held pursuant to the legal process," that was still five years before he filed his Complaint in September 2019. As such, his false arrest claim is time-barred. Plaintiff's Fourth Amendment claim for unlawful search is also barred by the two-year limitations period. That claim accrued, and the limitation period began to run, at the time Plaintiff was injured in 2012. *Mujaddid v. Wehling*, 663 F. App'x 115, 119 (3d Cir. 2016) (explaining unlawful search claims accrue at the time of injury); *Rolax v. Whitman*, 53 F. App'x 635, 637 (3d Cir. 2002) (unlawful search claim accrues at time of search). Plaintiff's claims appear well and truly time barred and will be dismissed as such. Because Plaintiff has not yet had an opportunity to address any potential argument for the tolling of the limitations period he may have, this Court will dismiss those claims without prejudice at this time.

**C. Failure to Protect**

The Court construes Plaintiff's second amended complaint as also raising a failure to protect claim. Plaintiff alleges the F.B.I. left him for dead in the County Jail in 2012 after Gershon Clark, a member of the Bloods, told individuals at the jail that Plaintiff had told on Clark. (ECF No. 7-2 at 3.) Additionally, Plaintiff seems to argue the F.B.I. agents failed to protect him in 2018 when he received a Facebook threat. (2nd Am. Compl. at 18-19.)

---

[2] The Court takes judicial notice that Plaintiff pled guilty to the firearms charge on September 24, 2014 and was sentenced on February 23, 2015. (*See* Civil Action No. 14-00559.)

To assert an Eighth Amendment failure to protect claim, an inmate must show he is "incarcerated under conditions posing a substantial risk of serious harm" and that the defendant was deliberately indifferent to the risk. *See Farmer*, 511 U.S. at 833, 837; *Bistrian v. Levi*, 696 F.3d 352, 367 (3d Cir. 2012). The Third Circuit has stated that:

> "Deliberate indifference" in this context is a subjective standard: "the prison official-defendant must actually have known or been aware of the excessive risk to inmate safety." *Beers–Capitol* [*v. Whetzel*], 256 F.3d [120] at 125 [ (3d Cir. 2001) ]. It is not sufficient that the official should have known of the risk. *Id.* at 133. A plaintiff [must] prove an official's actual knowledge of a substantial risk to his safety . . . .

*Bistrian*, 696 F.3d at 367-69; ("[Plaintiff] plausibly alleges that certain prison officials actually knew that he faced an excessive risk of harm by being placed in the SHU recreation yard [with the inmates who assaulted him] because he repeatedly advised (both verbally and in writing) [the prison officials] . . . of the multiple threats [those particular inmates made to him.]"); *see also Miller v. Ricci*, No. 11-0859, 2011 WL 1655764, at *10 (D.N.J. Apr. 28, 2011) ("To plead an Eighth Amendment failure to protect claim a plaintiff must plead facts raising a plausible inference of . . . the defendants' deliberate indifference to that particular risk of harm.").

Plaintiff does not allege sufficient facts to support a claim of failure to protect. Plaintiff submits he was in danger in 2012, when he was sent to jail after informing on individuals, and he was in danger in 2018, when he received a Facebook threat. Plaintiff does not allege facts that he informed the F.B.I. of either of these dangers. Plaintiff does not submit any facts the defendants knew Plaintiff was at an excessive risk of harm and were deliberately indifferent to the risk. Plaintiff's claim thus falls woefully short of meeting the Rule 12(b)(6) standard under *Iqbal* and *Twombly*. *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 570. Therefore, Plaintiff's claim of failure to protect against defendants is dismissed without prejudice.

### D. Sentencing

Plaintiff also seeks a sentence of time served in a federal escape case he submits he has pending. (*See generally* ECF No. 7-2.) A civil rights matter, however, may not be used to challenge the fact or length of a prisoner's detention – any claim which would impugn or otherwise overturn the fact or length of a prisoner's detention must be raised either via a criminal motion or a habeas petition. *See, e.g., Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005) ("[A] . . . prisoner's [civil rights] action is barred (absent prior invalidation [of his period of detention]) – no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal [disciplinary] proceedings) – if success in that action would necessarily demonstrate the invalidity of the confinement or its duration."); *Edwards v. Balisok*, 520 U.S. 641, 643-48 (1997) (award or restoration of additional jail credits in civil rights action would impugn validity of length of detention). Therefore, to the extent Plaintiff seeks to challenge the length of his confinement, or seeks to challenge his potential, he must do so by filing a petition for a writ of habeas corpus. *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973).

## IV. CONCLUSION

For the reasons stated above, the second amended complaint will be dismissed in its entirety pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A for failure to state a claim upon which relief may be granted. The contract claim is dismissed for lack of jurisdiction. Plaintiff's false arrest, illegal search, and failure to protect claims are dismissed without prejudice. Plaintiff's sentencing claim is dismissed without prejudice to any right he may have to bring such a claim in a federal habeas petition. Because it is conceivable Plaintiff may be able to supplement his pleading with facts sufficient to overcome the deficiencies noted herein, the Court will grant Plaintiff leave to move to re-open this case and to file a third amended complaint. An appropriate order follows.

Dated: March 25, 2021                                 */s/Brian R. Martinotti*
                                                                       **HON. BRIAN R. MARTINOTTI**
                                                                       **UNITED STATES DISTRICT JUDGE**